IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

_____
                                                    :
SURFCT.COM, INC.                                    :        CIVIL ACTION NO. _____
                    Plaintiff                       :
                                                    :
v.                                                  :
                                                    :
MARC PEREIRA, SURFCTUNIVERSAL, LLC   :
and DSD APPLICATIONS, LLC                           :        MAY 11, 2020
                    Defendants.                     :
_____           :

## COMPLAINT

The Plaintiff SurfCT.com, Inc. ("SurfCT"), an innovative company specializing in dental technology, brings this action against its former employee Marc Pereira ("Pereira"), his company SurfCTUniversal, LLC ("SurfCTUniversal"), and his new employer, and SurfCT's competitor DSD Applications, LLC ("DSD") (collectively the "Defendants") to enjoin its former employee and its primary competitor from misappropriating SurfCT's trade secrets in breach of contract, federal, and state laws.

## JURISDICTION AND VENUE

1.      The United States District Court has jurisdiction over this matter pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836 and 28 U.S.C. § 1331. This court has supplemental jurisdiction over the related state law claims for relief pursuant to 28 U.S.C. § 1367.

2.      The value of the rights SurfCT seeks to protect in this action, including its trade secrets and confidential information, as well as the damages it seeks to recover

from the Defendants, including but not limited to lost profits caused by the Defendants' conduct, exceeds the jurisdictional amount of $75,000.00.

3.      Venue is proper in the United States District Court for the District of Connecticut pursuant to 28 U.S.C. §1391(b) because the Plaintiff and Defendants Pereira and SurfCTUniversal are located in Connecticut, and Defendant DSD does business in Connecticut.

## **PARTIES**

4.      The Plaintiff SurfCT is a Connecticut corporation with its principal place of business at 1453 New Haven Rd., Naugatuck, Connecticut.

5.      Pereira is an individual Connecticut resident who resides, upon information and belief, at 45 John Street Naugatuck, Connecticut.

6.      SurfCTUniversal is a Connecticut limited liability company of which Pereira is the sole member/owner, with its business address at 339 North Main Street, Naugatuck, Connecticut.

7.      DSD is a Delaware limited liability company with its business address at 600 Brickell Ave, Ste. 1606, Miami, Florida.

8.      SurfCT is a dental information technology company that creates custom technology solutions for its dental office customers to integrate screens across a dental practice and mobile. SurfCT also provides technical support and data protection programs to clients.  It provides computer hardware and software sales, service and troubleshooting, installing and servicing telephone systems, and developing websites. Most of its customers are dental practices and its customers are located all over the United States.

2

59932320 v1

9.      DSD is also a dental education and technology company that provides dental office clients a tool, called Digital Smile Design, to evaluate, diagnose, and educate dental patients and facilitate communication among members of the dental practice. DSD solicits business and contracts with customers all over the country, including in Connecticut.

## FACTS

***Pereira Joins SurfCT and Executes a Non-Compete and Non-Disclosure Agreement***

10.      Paul Vigario ("Vigario") is the President and Founder of SurfCT.

11.      Pereira and Vigario grew up together as friends and have known one another since they were approximately three years old.

12.      On September 13, 2012, Pereira began working for SurfCT as a commissions-based sales representative. SurfCT employs fewer than a dozen sales representatives that form a tight-knit group. When he joined SurfCT, Pereira did not have any background in dental information technology, dentistry, dental sales, or the like.

13.      In late 2016, Pereira requested permission from SurfCT to set up and be paid through an LLC for accounting reasons. He formed and became the sole member of SurfCTUniversal, LLC.  SurfCT questioned the name because it so closely resembled SurfCT's name, and Pereira said he would change it, although he never did.

14.      On or about December 21, 2016, Pereira, as sole member of SurfCTUniversal, an entity which existed solely for his benefit, executed a Non-Compete/Non-Disclosure Agreement (the "Agreement") with SurfCT attached as Exhibit

3

A. The Agreement provided various protections for SurfCT's business, including protections of its confidential information and trade secrets, and a covenant not to compete.

15.     Specifically, in Section 1.2, Pereira agreed:

[A]t all times during the term of [his] engagement and thereafter, to hold in strictest confidence, and not to use, except for the exclusive benefit of the Company, or to disclose to any person, firm or corporation without written authorization of the Company, any Confidential Information of the Company.

16.     The Agreement defines, in Section 1.2(b), Confidential Information as "information that is of value to its owner and is treated as confidential other than Trade Secrets."

17.     Section 1.2 (a) defines Trade Secrets as "trade secrets as defined under Connecticut law, as amended from time to time."

18.     In Section 1.5 of the Agreement, Pereira agreed that he will not "disclose the Confidential Information and Trade Secrets" of SurfCT. Section 1.5 (II) clarifies that the Agreement's restrictions on Confidential Information and Trade Secrets "will survive the expiration or termination, as the case may be, of this Agreement and those obligations will last indefinitely."

19.     In Section 1.4 of the Agreement, Pereira agreed that he:

[W]ill not (i) serve as a partner, employee, independent contractor, consultant, officer, director, manager, agent, associate, or otherwise for, (ii) directly or indirectly, own, purchase, organize, or take preparatory steps for the organization of any business in competition with or otherwise similar to the company's business, including but not limited to, supporting any and all medical or dental offices, or provide IT hardware and, or services in any way to anyone for the duration of [Pereira's] employment with the Company and for a period of twelve (12) months thereafter.

4

20.     And in Section 1.9 of the Agreement, Pereira agreed that:

[F]or the duration of [his] engagement with the Company and for a period of twelve (12) months thereafter, [Pereira]. . . will [not] sell, license, market or promote to any Customer any product similar in function to or otherwise competitive with any of [SurfCT's] products.

***Pereira Acquires Knowledge of SurfCT's Trade Secrets and Confidential Information.***

21.     In his role as a salesperson for SurfCT, Pereira worked closely with Vigario and became well versed in SurfCT's Confidential Information and Trade Secrets. He had both a common-law and contractual duty to maintain the secrecy of this information.

22.     As a salesperson, Pereira, on behalf of SurfCTUniversal, was primarily responsible for selling SurfCT's products and integrated systems directly to SurfCT's dental practice clients and working directly with the dental offices to integrate these systems. Accordingly, he became intimately familiar with the workings of SurfCT's products and systems.

23.     Specifically, Pereira has knowledge of SurfCT's (1) customers; (2) technicians to hire; (3) how SurfCT sets up technology and integrates that technology either in whole offices or in individual dental office rooms to ensure the computers and screens interact with one another. Specifically, Pereira worked with a system designed, sold and installed by SurfCT called DSD Room under SurfCT's DSD Technology license agreement.

24.     The way in which SurfCT puts together the various technology elements within a dental practice to create an effective workflow include SurfCT's trade secrets as

5

the basis of its business model; the secret lies in how information flows and works within the system. SurfCT makes great efforts to protect this information by allowing only salespeople who sign confidentiality agreements to have access to said information, and by not divulging the trade secret information to customers or when Vigario gives lectures on the business.

***Pereira Leaves SurfCT for DSD with SurfCT's Trade Secrets and Confidential Information.***

25.     In or about October 2019, Pereira began to express to Vigario that he wanted to look for other employment because he wanted a role that was not commissions-based, as his role with SurfCT was.

26.     Vigario told Pereira that he could not go to work at DSD because DSD is a competitor of SurfCT and the two companies share the same pool of potential customers.

27.     In or about January 2020, Pereira told Vigario that Ralph Georg from DSD had been contacting him about potential employment.  Pereira said that Georg was "all over me" to join DSD.  Vigario told Pereira that he could speak to Mr. Georg if he wanted, but that he could not go work for DSD. Vigario also reminded Pereira on several occasions of his non-compete obligations that would prevent him from working for DSD.

28.     Upon information and belief, DSD solicited Pereira to come work for it, specifically because of his work with SurfCT and his knowledge of SurfCT's products and services, in which DSD saw potential value.  Because DSD's principals were from

6

Brazil, and Peirara spoke Portuguese and had lived in Brazil, DSD considered Peirera to be a good cultural fit with the company.

29.    On or about April 30, DSD hired Pereira as a DSD salesperson based in Connecticut to work with clients and potential clients of DSD products in Connecticut and all around the country. DSD hired Pereira at the height of the Covid-19 pandemic that had caused the highest unemployment rates since the Great Depression.

30.    Upon information and belief, Pereira began engaging DSD in discussions and with information on or about January 2020, before his formal date of hire and without disclosing to Vigario that he had been working for DSD.

31.    Pereira admitted to Vigario in or about April 2020 that he had an understanding of how to take SurfCT's confidential information and trade secrets, specifically the information described above, and apply it to DSD's product.

32.    Also in April 2020, Pereira texted Vigario "Thanks for being there always and I wouldn't have gotten this opportunity [with DSD] [w]ithout your guidance and leadership thru the years."

## COUNT ONE – VIOLATION OF THE DEFEND TRADE SECRETS ACT ("DTSA"), 18 U.S.C. §1836 (AS TO PEREIRA, SURFCTUNIVERSAL, AND DSD)

1-32.   SurfCT incorporates Paragraphs 1- 32 of the Complaint into this Count One as if fully set forth herein.

33.    SurfCT's Trade Secrets constitute trade secrets protected by the DTSA in that they constitute information with independent economic value for which SurfCT has taken reasonable measures to keep secret.

59932320 v1

34.     SurfCT's Trade Secrets derive independent economic value because they are the cornerstone of SurfCT's unique business model, which allow SurfCT to gain a competitive advantage in the market of dental information technology services.

35.     Moreover, SurfCT's Trade Secrets derive independent economic value by not being accessible, through proper means, to competitors like DSD, who can profit from its use or disclosure.

36.     SurfCT has taken reasonable measures to keep its Trade Secrets secret, including by restricting the people to whom they are disclosed to only certain key employees, and requiring those employees to sign agreements agreeing to not to use or disclose these Trade Secrets. Moreover, SurfCT has told his employees numerous times, including Pereira, specifically not to disclose trade secrets to DSD.

37.     SurfCT has spent significant resources to develop, protect, and maintain the Confidential Information and Trade Secrets.

38.     SurfCT's Trade Secrets are used for its products and services, which are used in interstate commerce, specifically by dental offices throughout the country.

39.     Pereira/SurfCTUniversal gained access to SurfCT's Trade Secrets during Pereira's time as a salesperson with SurfCT. This knowledge of SurfCT's Trade Secrets was acquired under circumstances giving rise to a duty to maintain their secrecy, including as specifically stated in the Agreement.

40.     Pereira and SurfCTUniversal have and will continue to misappropriate SurfCT's Trade Secrets in Pereira's employment with DSD. Upon information and belief, Pereira has already disclosed and/or used SurfCT's Trade Secrets to further DSD's

products and service in bad faith in order to help DSD gain a competitive advantage over SurfCT and in turn, harm SurfCT's business.

41.     Moreover, DSD has and will continue to misappropriate SurfCT's Trade Secrets in that it has improperly acquired SurfCT's Trade Secret information from Pereira/SurfCTUniversal despite knowing or having reason to know that Pereira was prohibited by contract and law from disclosing SurfCT's Trade Secrets, and thus inducing Pereira to breach his confidentiality obligations to SurfCT.  DSD will use Pereira's knowledge to target technicians to join DSD who have knowledge as to how to build and integrate systems within entire dental offices and individual rooms within dental offices.  Without such knowledge or access to such knowledge DSD will have difficulty duplicating SurfCT's systems and units.  It is precisely to obtain this knowledge and access that DSD brought Pereira on board.

42.     As a result of Pereira, SurfCTUniversal and DSD's conduct, SurfCT has and will continue to suffer damages, including but not limited to a loss of competitive advantage, sales, and relationships and goodwill with current and prospective clients, as well as irreparable harm to SurfCT business, for which SurfCT is entitled to immediate injunctive relief.

43.     SurfCT has no adequate remedy at law and will continue to suffer irreparable harm unless Pereira and DSD are enjoined.

44.     The actual and threatened injury to the SurfCT outweighs whatever damage the proposed injunctive relief may cause to Pereira, SurfCTUniversal, and/or DSD, and any injunction would not be adverse to the public interest.  If Pereira and/or DSD are not enjoined from misappropriating SurfCT's Trade Secrets, SurfCT will be

irreparably harmed inasmuch as it will suffer a loss of competitive advantage, sales, and relationships and goodwill with current and prospective clients, and Pereira will make use of and disclose SurfCT's confidential information while working for DSD, which harm cannot be recovered by money damages alone.

**COUNT TWO – MISAPPROPRIATION OF TRADE SECRETS UNDER THE CONNECTICUT UNIFORM TRADE SECRETS ACT ("CUTSA"), Conn. Gen Stat. §§35-50 – 35-58) (AS TO PEREIRA, SURFCTUNIVERSAL, AND DSD)**

1-44.   SurfCT incorporates Paragraphs 1- 44 of the Complaint into this Count Two as if fully set forth herein.

45.   SurfCT's Trade Secrets, as defined by the Agreement, constitute trade secrets protected by CUTSA.

46.   Pereira's conduct described above, individually and on behalf of SurfCTUniversal, constitutes a misappropriation and misuse of SurfCT's Trade Secrets in violation of CUTSA because Pereira's position with DSD threatens to use and/or disclose SurfCT's trade secrets and confidential information without SurfCT's consent in the business of a direct competitor.

47.   Pereira's knowledge of SurfCT's Trade Secrets was acquired under circumstances giving rise to a duty to maintain their secrecy, including as specifically stated in the Agreement.

48.   Pereira and/or SurfCTUniversal have and will continue to misappropriate SurfCT's Trade Secrets in his employment with DSD. Upon information and belief, Pereira has already disclosed and/or used SurfCT's Trade Secrets to further DSD's products and service and help DSD gain a competitive advantage over SurfCT.

10

49.     Moreover, DSD has and will continue to misappropriate SurfCT's Trade Secrets in that it has improperly acquired SurfCT's Trade Secret information from Pereira despite knowing or having reason to know that Pereira was prohibited by contract and law from disclosing SurfCT's Trade Secrets, and thus inducing Pereira to breach his confidentiality obligations to SurfCT.

50.     As a result of Pereira, SurfCTUniversal, and DSD's conduct, SurfCT has and will continue to suffer damages, including but not limited to a loss of competitive advantage, sales, and relationships and goodwill with current and prospective clients, as well as irreparable harm to SurfCT's business, for which SurfCT is entitled to immediate injunctive relief.

51.     SurfCT has no adequate remedy at law and will continue to suffer irreparable harm unless Pereira is enjoined.

52.     The actual and threatened injury to the SurfCT outweighs whatever damage the proposed injunctive relief may cause to Pereira, SurfCTUniversal, and DSD, and any injunction would not be adverse to the public interest.  If Pereira is not enjoined from violation of the Agreement, SurfCT will be irreparably harmed inasmuch as it will suffer a loss of competitive advantage, sales, and relationships and goodwill with current and prospective clients, and Pereira will make use of and disclose SurfCT's confidential information while working for DSD, which harm cannot be recovered by money damages alone.

## COUNT THREE – BREACH OF CONTRACT (AS TO SURFCTUNIVERSAL AND PEREIRA)

1-52.   SurfCT incorporates Paragraphs 1-52 of the Complaint into this Count Three as if fully set forth herein.

53.   Pereira executed the Agreement, as described above, as the sole member of SurfCTUniversal, intending to be personally bound by the Agreement's restrictions.

54.   Pereira was the sole member and officer of SurfCTUniversal, as listed on the Connecticut Secretary of the State's website. Upon information and belief, SurfCTUniversal never filed tax returns or annual reports with the State. Pereira exercised complete domination of SurfCTUniversal, including of its finances, policies, and business practices, including with respect to signing the Agreement.

55.   Pereira and SurfCTUniversal breached the Agreement, specifically Section 1.5, but using and/or disclosing SurfCT's Trade Secrets and Confidential Information in connection with his employment with DSD.

56.   Pereira and SurfCTUniversal also breached Section 1.4 of the Agreement by accepting employment with DSD, a competitive business as defined under Section 1.4, within twelve months of his employment with SurfCT.

57.   Finally, Pereira and SurfCTUniversal has or will imminently breach Section 1.9 of the Agreement by selling or promoting DSD App, a productive competitive to SurfCT's products as defined under the Agreement, to SurfCT's customers, of which Pereira has knowledge.

58.   SurfCT has performed all of its contractual obligations under the Agreement and has satisfied all conditions precedent to enforcement of the Agreement.

59.     As a result of Pereira and SurfCTUniversal's conduct, SurfCT has and will continue to suffer damages, including but not limited to a loss of competitive advantage, sales, and relationships and goodwill with current and prospective clients, as well as irreparable harm to SurfCT's business, for which SurfCT is entitled to immediate injunctive relief.

60.     SurfCT has no adequate remedy at law and will continue to suffer irreparable harm unless Pereira and SurfCTUniversal are enjoined.

61.     The actual and threatened injury to the SurfCT outweighs whatever damage the proposed injunctive relief may cause to Pereira and SurfCTUniversal, and any injunction would not be adverse to the public interest.  If Pereira and SurfCTUniversal are not enjoined from violation of the Agreement, SurfCT will be irreparably harmed inasmuch as it will suffer a loss of competitive advantage, sales, and relationships and goodwill with current and prospective clients, and Pereira will make use of and disclose SurfCT's confidential information while working for DSD, which harm cannot be recovered by money damages alone.

**COUNT FOUR – TORTIOUS INTERFERENCE WITH CONTRACT (AS TO DSD)**

1-61.   SurfCT incorporates Paragraphs 1-61 of the Complaint into this Count Four as if fully set forth herein.

62.     SurfCT had a valid contractual relationship with Pereira based on the Agreement he executed on behalf of SurfCTUniversal.

63.     The Agreement prohibited Pereira from, *inter alia,* using or disclosing SurfCT's Trade Secrets or Confidential Information, working for or assisting a competitor, or selling or developing any competitive product.

64.     DSD was aware of Pereira's contractual relationship with SurfCT when it hired him, but, upon information and belief, hired Pereira specifically for the purpose of taking one of SurfCT's longtime employees with access to SurfCT's customer base, and gaining access to knowledge of SurfCT's Trade Secrets and Confidential Information.

65.     In hiring Pereira, DSD intended to interfere with the contractual relationship between SurfCT and Pereira.

66.     DSD's conduct was tortious and motivated by its desire to further competition between DSD and SurfCT, which are competitive businesses providing dental information technology solutions.

67.     As a result of DSD's tortious conduct, SurfCT has and will continue to suffer damages, including but not limited to a loss of competitive advantage, sales, and relationships and goodwill with current and prospective clients, as well as irreparable harm to SURFCT's business, for which SURFCT is entitled to immediate injunctive relief.

## COUNT FIVE – VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT (AS TO DSD)

1-67.   SurfCT incorporates Paragraphs 1-67 of the Complaint into this Count Five as if fully set forth herein.

68.     A valid and enforceable contract exists between SurfCT and Pereira, as a member of SurfCTUniversal, that prohibits Pereira from, *inter alia,* using or disclosing SurfCT's Confidential Information and Trade Secrets, working for or assisting a competing company, or soliciting or servicing SurfCT's clients.

14

69.     DSD had knowledge of the contractual relationship between SurfCT and Pereira.

70.     Moreover, DSD had knowledge, when it hired Pereira that he was in possession of SurfCT's Confidential Information and Trade Secrets and could use them to DSD's advantage. Indeed, upon information and belief, DSD hired Pereira specifically for that reason.

71.     DSD's conduct of hiring Pereira specifically because of his position with SurfCT, and his knowledge of SurfCT's Confidential Information and Trade Secrets specifically in order to gain a competitive advantage over SurfCT, was immoral, unethical, and unfair.

72.     As a result of DSD's tortious conduct, SurfCT has and will continue to suffer damages, including but not limited to a loss of competitive advantage, sales, and relationships and goodwill with current and prospective clients, as well as irreparable harm to SURFCT's business, for which SURFCT is entitled to immediate injunctive relief.

59932320 v1

## PRAYER FOR RELIEF

WHEREFORE, upon all allegations and counts alleged herein, SurfCT respectfully asks that this Court grant the following relief:

1.  Temporary and Permanent Injunctive relief enjoining Pereira and SurfCTUniversal from:

    a.  competing with SurfCT or engaging in any business or enterprise with any company that is competitive with SurfCT's business, including any employment or affiliation with DSD,  for a period of one (1)  year from the date of the entry of the order and specifically enjoining and restraining Pereira from violating the provisions of the Agreement;

    b.  sharing, disclosing, or making use of the SurfCT's Confidential Information and/or Trade Secrets, as defined by the Agreement, for as long as SurfCT deems such protection necessary;

    c.  selling, licensing, marketing or promoting any product similar to SurfCT's, as defined by the Agreement, to any of SurfCT's customers for a period of one (1) year following the Court's order; and

    d.  requiring Pereira to dissolve SurfCTUniversal and cease using the name SurfCT in any form in his business.

2.  Temporary and Permanent Injunctive relief enjoining DSD from:

    a.  employing or working with Pereira in any capacity in violation of his Agreement with SurfCT for a period of one (1) year following the Court's order;

16

    b.  sharing, disclosing, or making use of the SurfCT's Confidential

       Information and/or Trade Secrets, as defined by the Agreement, for as

       long as SurfCT deems such protection necessary.

3.    Compensatory damages resulting from Pereira and DSD's breaches in an

amount not less than $250,000;

4.    Attorney's fees pursuant to Conn. Gen. Stat. §35-53, Conn. Gen. Stat. 42-

110g(d)and §18 USC 1836(b)(3)(D).

5.    Relief for DSD's unjust enrichment pursuant to Conn. Gen. Stat. §35-53.

6.    Common law and statutory punitive and exemplary damages in an amount

to be determined at trial; and

7.    Any other relief this Court deems appropriate.


Respectfully submitted,

THE PLAINTIFF,

SURFCT.COM, INC.


By   /s/  *Jeffrey J. Mirman*
       Jeffrey J. Mirman (ct05433)
       Alexa T. Millinger (ct29800)
       HINCKLEY ALLEN & SNYDER, LLP
       20 Church Street
       Hartford, Connecticut 06103
       jmirman@hinckleyallen.com
       amillinger@hinckleyallen.com
       Telephone: (860) 725-6200
       Facsimile: (860) 278-3802
       Its Attorneys

17

1of 18

## **VERIFICATION**

I hereby acknowledge that the facts contained in the foregoing Verified Complaint are true and accurate to the best of my knowledge, information and belief.

SURFCT.COM, INC.

By: _____

Paul Vigario
Its Authorized Agent

STATE OF CONNECTICUT )
)  ss.
COUNTY OF NEW HAVEN )

Then and there appeared remotely, pursuant to Section 3 of State of Connecticut Executive Order No. 7Q dated March 30, 2020, Paul Vigario, President of SurfCT.com, Inc. who subscribed the foregoing Complaint and who swore to the truth of the statements contained therein before me, the undersigned authority on this 11th day of May, 2020.

_____

Commissioner of the Superior Court/
Notary Public
Juris No. 436302